IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY E. MANUS, | ) | |
|     Plaintiff | ) | Civil Action No. 14-26 Erie |
| | ) | |
| v. | ) | District Judge Fischer |
| | ) | Magistrate Judge Baxter |
| MILLCREEK TOWNSHIP, et al., | ) | |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 37] be granted, and that judgment be entered in favor of Defendants and against Plaintiff on all claims in this case.

### II.    REPORT

#### A.    Relevant Procedural History

Plaintiff Larry E. Manus initiated this action on January 29, 2014, by filing a civil rights complaint against Defendants Millcreek Township, Erie County, Pennsylvania ("Millcreek"); and Millcreek Township Supervisors Suzanne R. Weber ("Weber"), Brian P. McGrath ("McGrath"), and Joseph S. Kujawa ("Kujawa"). Defendants Weber and Kujawa were subsequently dismissed from this case pursuant to Memorandum Order of District Judge Nora Barry Fischer, dated February 4, 2015. [ECF No. 19].

As against the remaining Defendants, Millcreek and McGrath, Plaintiff alleges claims of race discrimination on the basis of wage disparity and hostile work environment, and a state law

1

claim of breach of contract. In particular, Plaintiff, an African-American, alleges that (1) Defendant Millcreek unlawfully discriminated against him on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), by paying him a lesser rate of compensation than that received by comparable Caucasian co-workers, and by subjecting him to a hostile work environment; (2) Defendants Millcreek and McGrath discriminated against him in violation of his rights under section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); (3) Defendant Millcreek violated his First and Fourteenth Amendment rights, pursuant to 42 U.S.C. §1983 ("Section 1983"); (4) Defendant McGrath violated his rights under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), by "aiding and abetting discrimination" against him; and (5) Defendant Millcreek breached the Collective Bargaining Agreement ("CBA") under which Plaintiff is employed.

On February 24, 2016, Defendants filed a motion for summary judgment as to all claims [ECF No. 37]. Plaintiff has since filed a response in opposition to Defendants' motion [ECF No. 39], to which Defendants have filed a reply [ECF No. 40]. This matter is now ripe for consideration.

**B.     Relevant Factual History**[1]

Plaintiff became employed by Defendant Millcreek in 1990. (ECF No. 38, Defendants' brief, at p. 1, ¶ 1). On April 14, 2009, Defendant Millcreek appointed Plaintiff to the position of

---

[1] The brief factual history is drawn from the statement of undisputed facts contained in Defendants' brief in support of their motion for summary judgment [ECF No. 38], to the extent the same have not been opposed by Plaintiff.

Assistant Garage Foreman. (Id. at ¶ 2). Approximately one year earlier, on March 11, 2008, Chuck Moyer ("Moyer"), a Caucasian senior mechanic, was appointed "Assistant Garage Foreman" with the duties of providing non-statutory supervision when the Supervisor of employees of the CBA was not present. (Id. at ¶ 3). Both Plaintiff and Moyer received the same pay raise of fifty cents an hour. (Id. at p. 2, ¶ 4; ECF No. 39, Plaintiff's opposition brief, at p. 2). Plaintiff was never appointed to the position of "Foreman." (ECF No. 38, Defendants' brief, at p. 2, ¶ 5). At the time Plaintiff's position of Assistant Garage Foreman was created, Plaintiff was President of the bargaining unit. (Id. at ¶ 8). Plaintiff was also a member of the negotiating team when the CBA was negotiated in 2011. (Id. at ¶ 9). Plaintiff has not lost any benefits of employment, including wages, at any time relevant to this lawsuit. (Id. at ¶ 10).

### C.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations

omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

### D. Discussion

#### 1. Race Discrimination - Wage Disparity

Count I of Plaintiff's complaint alleges, in part, that Defendants Millcreek unlawfully discriminated against him by subjecting him to disparate treatment on the basis of race, in violation of Title VII. Count II of Plaintiff's complaint adds, in part, that both Defendants Millcreek and McGrath unlawfully discriminated against him in violation of Section 1981. Count III of Plaintiff's complaint adds that Defendant McGrath "aided and abetted discrimination

5

against Plaintiff" in violation of the PHRA. All of these claims are founded upon Plaintiff's assertion that he was paid a lesser rate of compensation than that received by comparable Caucasian co-workers.

As a preliminary matter, the Third Circuit has held that the legal standard applicable to a Section 1981 case is identical to the standard in a Title VII case. Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII"); Anderson v. Wachovia Mort. Corp., 621 F.3d 261, 270 (3d Cir. 2010) ("In the absence of direct evidence of discrimination," the familiar burden-shifting framework applicable to Title VII cases applies). Similarly, courts have uniformly interpreted the PHRA consistent with Title VII. See Harris v. SmithKline Beecham, 27 F.Supp.2d 569, 576 (E.D.Pa. 1998); Clark v. Commonwealth of Pennsylvania, 885 F.Supp. 694, 714 (E.D.Pa. 1995); Violanti v. Emery Worldwide A-CF Co., 847 F.Supp. 1251, 1257 (M.D.Pa. 1994). Thus, Plaintiff's race discrimination claims will be uniformly analyzed under the standards applicable to a Title VII case.

Title VII cases are examined according to the burden-shifting framework that was first established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Within this framework, Plaintiff must first establish a *prima facie* case of discrimination by proving the following four basic facts: (i) he is a member of a protected class; (ii) he was qualified for the position in question; (iii) he suffered an adverse employment action; and (iv) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008), citing

McDonnell Douglas, 411 U.S. at 802. Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Here, Defendants assert that Plaintiff cannot meet his burden of proving that he suffered an adverse employment action. An adverse employment action sufficient to support a *prima facie* case of discrimination must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing significant change in benefits," and which "in most cases inflicts direct economic harm." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). The action must be actually adverse to the employee, "as opposed to conduct that the employee generally finds objectionable." Nelson v. Upsala College, 51 F.3d 383, 387-88 (3d Cir. 1995).

Defendants assert that Plaintiff has suffered no significant change in employment status, nor has he incurred any loss of wages or other employment benefits. Instead, Plaintiff has maintained the same job title and wage that he agreed to accept when he took over the job of Assistant Garage Foreman from his Caucasian predecessor in 2009. (ECF No. 38, Defendants' brief, at p. 19). In response, although Plaintiff's claim of disparate treatment is based on his assertion that he "was paid at a level of compensation less than that paid his comparable white co-workers" (ECF No. 1, Complaint, at ¶ 29(a)), he now argues that he suffered an adverse employment action when Defendants failed to promote him despite his taking on the duties of a foreman, and "despite the recommendation of his manager," Bill Hitchcock ("Hitchcock"). (ECF No. 39, Plaintiff's opposition brief, at p. 4). In support of this claim, Plaintiff has attached to his

opposition brief a copy of a letter from Hitchcock to Millcreek Township Supervisor Joe Kujawa, dated August 7, 2012, in which he states, in pertinent part:

> As [Plaintiff] takes on more responsibility, I feel it is only fair that he be compensated for his efforts.
>
> I would like to request that the pay for Garage Foreman be set at the level for job foreman listed in the collective bargaining contract. The current hourly rate is $26.1682.

(ECF No. 39, Plaintiff's opposition brief, at p. 7).

Despite Plaintiff's attempt to construe Hitchcock's letter as a recommendation that he be promoted to the position of foreman, it is clear that Hitchcock merely recommended that Plaintiff's hourly pay be increased to that of a job foreman. Thus, Plaintiff cannot support a failure to promote claim. Moreover, as indicated in Hitchcock's letter, at the time Plaintiff's pay increase was recommended, a foreman's hourly pay was set at the rate of $26.1682 pursuant to Section VII, page 6 of the CBA. (See ECF No. 38-2, Arbitration Opinion and Award, at p. 5). According to Plaintiff's complaint, as of October 30, 2012, he was being paid at the rate of $26.51 per hour, approximately $ .35 more than a foreman's hourly rate. (ECF No. 1, Complaint, at ¶ 3). Thus, by his own admission, Plaintiff ultimately received an hourly rate that exceeded the foreman rate he was seeking. Even assuming the date cited in the complaint was a clerical error by Plaintiff's attorney, and that October 30, 201**3** was intended, Plaintiff's rate would still have been roughly the same as a foreman's 2013 rate of $26.8224 (See ECF No. 38-2, Arbitration Opinion and Award, at p. 5).

Based on the foregoing, this Court finds that Plaintiff has failed to demonstrate that he

suffered an adverse employment action sufficient to support a *prima facie* case of race discrimination based on wage disparity. As a result, summary judgment should be granted in favor of Defendant Millcreek as to Plaintiff's Title VII claim of wage disparity, and in favor of Defendants Millcreek and McGrath as to Plaintiff's Section 1981 claim of wage disparity.

### 2. Race Discrimination - Hostile Work Environment

Plaintiff also brings hostile work environment claims against Defendant Millcreek, under Title VII; Defendants Millcreek and McGrath, under Section 1981; and Defendant McGrath, under the PHRA. In general, Plaintiff alleges that, since 1991, he has been continually subjected to "racially offensive, derogatory and degrading affronts," and been "physically accosted in the workplace," and "the butt of jokes due [to] the disparity of his pay." (ECF No. 1, Complaint, at ¶29(b)).

In order to state a claim of race discrimination resulting from a hostile work environment, "a plaintiff must show (i) that he suffered intentional discrimination because of his race; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected him; (iv) the discrimination would detrimentally affect a reasonable person of the same race; and (v) there is a basis for employer liability." Torres v. City of Philadelphia, 907 F.Supp.2d 681, 688 (E.D.Pa. 2012), citing Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 20007). In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001), the Supreme Court established a framework for analyzing the "severe and pervasive prong":

> [H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in

> isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

(internal citations and quotation marks omitted).

Under the foregoing standard, Plaintiff has failed to state a cognizable hostile work environment claim. In particular, Plaintiff has failed to provide any evidence to support his claim that discrimination was severe or pervasive. Aside from generalized allegations that he was the "constant object of derision, ridicule and jokes, directed at him by his co-workers and management personnel" (ECF No. 1, Complaint, at ¶ 17), Plaintiff specifically alleges only two direct acts against him. The first occurred in June 1995, when Plaintiff's former supervisor, Joseph Little ("Little"), who was suspended for two days for "directing racially offensive and derogatory remarks at Plaintiff including the terms 'nigger' and a 'black bastard.'" (Id. at ¶¶ 25-26). The second occurred in or around September 2012, when a co-worker, Scott Bridger, allegedly bumped Plaintiff's chest and yelled that Plaintiff did not deserve to be paid at the level of a foreman and that he should have Plaintiff's job. (Id. at ¶ 15). However, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). See also Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (isolated incidents that are not extremely serious are not sufficient to sustain a hostile work environment claim).

Not only are the above incidents separated by more than seventeen years, neither incident is deemed to be "extremely serious," such that it interfered with Plaintiff's work performance and

created an abusive work environment. Indeed, Plaintiff has failed to produce any evidence to support his claim of ongoing discriminatory actions at his workplace between the two isolated incidents noted above. Thus, Plaintiff is unable to demonstrate that he was subjected to a hostile work environment, and Defendants should be granted summary judgment as to all of Plaintiff's hostile work environment claims.

### 3. Section 1983 Constitutional Claims

Plaintiff alleges that, "[t]hrough its agents and supervisory/management personnel, [Defendant Millcreek] violated Plaintiff's constitutional rights" under the First and Fourteenth Amendments. (ECF No. 1, Complaint, at ¶ 32).

To establish a municipal liability claim under §1983, Plaintiff must prove the existence of a policy or custom that resulted in a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978). In particular, Plaintiff must establish that the claimed policy or custom was the "'moving force' behind the violation of his Constitutional rights." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cor. 2002) (citation omitted). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

Here, Plaintiff has alleged that, "[f]or purposes of applying Section 1983, [Defendant Millcreek] approved of and implemented a longstanding policy involving the discriminatory and disparity of pay as it relates to Plaintiff's level of compensation, relative to his white co-workers." (ECF No. 1, Complaint, at ¶ 33). Plaintiff has since offered three pieces of evidence to

11

substantiate the existence of this "policy" to discriminate against him: (i) a letter from Millcreek Township Supervisor Sue Weber, dated August 21, 1998, in which Weber expressed her displeasure at Plaintiff's challenge of the Supervisors' discipline of a black employee, and instructed Plaintiff to stop contacting her directly regarding matters of employee discipline (ECF No. 39, Plaintiff's opposition brief, at p. 8); (ii) a decision of the Pennsylvania Labor Relations Board, dated September 29, 1999, which concluded that Defendant Millcreek committed unfair practices against Plaintiff as a result of Weber's letter (Id. at pp. 9-13); and (iii) a decision of the Pennsylvania Bureau of Mediation, dated September 15, 1999, finding that Plaintiff was entitled to the restoration of four hours of vacation leave that Defendant Millcreek previously denied him (Id. pp. 14-30).

All of these documents are dated approximately ten years before the date Plaintiff was assigned the position of Assistant Garage Foreman, and approximately thirteen years before Hitchcock recommended that Plaintiff receive the pay increase that Plaintiff now claims he was denied as a result of Defendant Millcreek's discriminatory "policy." Thus, Plaintiff has failed to establish a "plausible nexus" between the alleged "policy" and the claimed deprivation of his constitutional rights, which is required to establish a municipal liability claim. As a result, summary judgment should be granted in favor of Defendant Millcreek as to Plaintiff's Section 1983 constitutional claims.

### 4. **Breach of Contract**

Plaintiff's final claim alleges that Defendant Millcreek "materially breached the employment contract which it sought to consummate with the Plaintiff because there is no

provision in the Collective Bargaining Agreement which addresses the position which Plaintiff occupies and the rate of pay which he received." (ECF No. 1, Complaint, at ¶ 41). As convoluted as this claim reads, it is apparent that it arises from alleged violations of the CBA executed between Defendant Millcreek and Plaintiff's union. As Defendants aptly point out, claims brought by a union employee against his employer for breach of a CBA fall exclusively within the purview of Section 301 of the Labor Management Relations Act ("LMRA"). See 29 U.S.C. § 185(a); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985) (finding that Section 301(a) of the LMRA govern claims that "substantially depend upon analysis of the terms of an agreement made between parties in a labor contract"); Angst v. Mack Trucks, 969 F.2d 1530, 1536 n.5 (3d Cir. 1992); Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66 (3d Cir. 1985) ("It is well recognized that individual employees can bring suit against their employers in federal court for breach of a contract between an employer and a union").

There are two recognized causes of action under Section 301 of the LMRA – a "pure" claim that involves a union suing an employer for breach of a collective bargaining agreement; and a "hybrid" claim involving a union member suing both the employer for breach of a collective bargaining agreement and his union for breaching its duty of fair representation. See Service Employees Int'l Union Local 36, AFL-CIO v. City Cleaning Co., 982 F.2d 89, 94 n.2 (3d Cir. 1992). Since no claim is being brought here on behalf of Plaintiff's union, Plaintiff's action must fit within the confines of a "hybrid" claim in order to state a cognizable cause of action under Section 301. Because Plaintiff has merely sued his employer without bringing a claim against his union for breaching its duty to provide him with fair representation, Plaintiff has

failed to set forth an actionable "hybrid" claim. See <u>DelCostello v. International Brotherhood of Teamsters</u>, 462 U.S. 151, 164 (1983) (holding that an employee protected by a collective bargaining agreement may sue his employer under Section 301 of the LMRA only after he has established that his or her right of fair representation has been violated by the union); <u>United Parcel Serv. v. Mitchell</u>, 451 U.S. 56, 66-67 (1981) ("To prevail against either the company or the Union, … [employee-plaintiff] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union").

Thus "a condition precedent to [a] Section 301 action against [an employer] is the legal efficacy of [a plaintiff's] fair representation claim against [his union]." <u>Hatchigian v. Interface Elec., Inc.</u>, 1993 WL 4138 (E.D.Pa. Jan. 6, 1993). There being no such claim of unfair representation alleged here against Plaintiff's union, Plaintiff's breach of contract claim against Defendant Millcreek is groundless. Accordingly, summary judgment should be granted Defendant Millcreek as to Plaintiff's breach of contract claim.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 37] be granted, and that judgment be entered in favor of Defendants and against Plaintiff on all claims in this case.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file

objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

                                                   s/Susan Paradise Baxter
                                                   SUSAN PARADISE BAXTER
                                                   United States Magistrate Judge

Dated: August 12, 2016

cc:     The Honorable Nora Barry Fischer
        United States District Judge